UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
——————

TERRELL ROCHE,

                        Plaintiff,                          Case No. 2:25-cv-275

v.                                                          Honorable Ray Kent

UNKNOWN RICKLARD et al.,

                        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Osterman and Hoult for failure to state a claim. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Ricklard: (1) Plaintiff's official capacity claims; and (2) any § 1983 claims regarding violations of MDOC policy. Plaintiff's personal capacity Eighth Amendment failure to protect claim against Defendant Ricklard remains in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred there. Plaintiff sues the following MBP personnel in their

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

official and personal capacities: Assistant Deputy Warden Unknown Hoult, ARUS/Prison Counselor Unknown Ricklard, and Resident Unit Manager Unknown Osterman. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that he was transferred to MBP on September 5, 2025. (*Id.*, PageID.3.) Immediately after getting off the bus, Plaintiff asked to be placed in protective custody "due to a bounty being placed on [his] person by the Almighty Vice Lord Nation and Almighty People's Nation, due to [Plaintiff] being an informant on [his] criminal cases [and] leaving the gang in 2018." (*Id.*) Plaintiff was placed in administrative segregation while "the MBP administration conducted an investigation." (*Id.*)

Plaintiff eventually received a copy of the investigative report. (*Id.*) The report "stated that MBP staff knew of recent assaults on [Plaintiff's] person at previous MDOC facilities [and his] placement in protection." (*Id.*) Plaintiff, however, was forced to go to general population. (*Id.*) According to Plaintiff, he was threatened with receiving disobeying a direct order misconduct tickets if he did not leave administrative segregation. (*Id.*) Plaintiff contends that receipt of such misconduct tickets would have kept him "in a high security level [and] hinder[ed] [his] chance for parole," and that he had a parole hearing scheduled for October 13, 2025. (*Id.*)

Before leaving administrative segregation, Plaintiff sent a kite to the "D-Block ARUS" and "begged him not to force" Plaintiff to go to general population. (*Id.*) The ARUS responded "stating either give more info of top gang leaders or go face the consequences of being a snitch, whatever happens, happens!" (*Id.*)

Plaintiff submitted a grievance while in general population, which was denied at Step I. (*Id.*) Plaintiff appealed to Step II, and while waiting for that response, the "big yard" was opened on October 20, 2025. (*Id.*) On that date, Plaintiff was using the phone to talk to his family and an

4

"inmate snuck up behind [him and] began to assault [Plaintiff]." (*Id.*) The inmate took Plaintiff to the ground, stomped Plaintiff on his ribs and head, and got on top of Plaintiff to "continuously" punch him. (*Id.*) Plaintiff had to receive X-rays of his rib cage and elbow. (*Id.*) Plaintiff avers that due to the assault, he has experienced nightmares and increased depression and anxiety. (*Id.*)

Based upon the foregoing, Plaintiff raises Eighth Amendment failure to protect claims, as well as claims regarding violations of MDOC policy. (*Id.*) Plaintiff seeks the following relief: (1) verbal and written apologies from all staff involved in denying him protection; (2) a transfer from MBP and placement in a facility with a "real" protective custody unit; (3) payment of any medical bills that result from the assault; and (4) compensatory, punitive, and nominal damages. (*Id.*, PageID.4.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff has named Defendants in both their official and personal capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments, such as the MDOC, are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who

6

may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks compensatory, punitive, and nominal damages. (Compl., ECF No. 1, PageID.4.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Plaintiff also seeks injunctive relief. (Compl., ECF No. 1, PageID.4.) Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Virginia Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.") The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff's allegations do not suggest that any of the Defendants are engaged in ongoing violations of federal law. Instead, Plaintiff's allegations concern discrete events that occurred in September and October of 2025. Plaintiff, therefore, does not seek relief that is

properly characterized as prospective. Accordingly, the Court will dismiss Plaintiff's official capacity claims against Defendants in their entirety.

### B.    Personal Capacity Claims

#### 1.    Eighth Amendment Failure to Protect Claims

Plaintiff contends that Defendants violated his Eighth Amendment rights by failing to protect him from the assault that occurred after Plaintiff was moved to general population.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th

8

Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Id.* at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. To establish a violation of this right, a plaintiff must show that prison officials were deliberately indifferent to his or her risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty.*

*of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

### a.    Defendants Hoult and Osterman

Plaintiff has named Assistant Deputy Warden Hoult and Resident Unit Manager Unknown Osterman as Defendants in this matter. Plaintiff, however, does not mention Defendants Hoult and Osterman within the factual allegations of his complaint or otherwise identify any actions that may be attributed to Defendants Hoult and Osterman.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them

which would suggest their involvement in the events leading to his injuries."). Furthermore, while Plaintiff references the "MBP Administration," a "[s]ummary reference to a single, five-headed 'Defendants' [or Administration] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)). Thus, Plaintiff's claims against Defendants Hoult and Osterman fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

To the extent that Plaintiff has named Hoult and Osterman because of their positions as Assistant Deputy Warden and Resident Unit Manager, the Court notes that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

"[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific

> incident of misconduct or in some other way directly participated in it." *Shehee*,
> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have
> interpreted this standard to mean that "at a minimum," the plaintiff must show that
> the defendant "at least implicitly authorized, approved, or knowingly acquiesced in
> the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995

F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege facts suggesting that Defendants Hoult and Osterman

encouraged or condoned the conduct of Defendant Ricklard, or authorized, approved, or

knowingly acquiesced in that conduct. As noted above, Plaintiff fails to set forth any allegations

at all regarding conduct that can be attributed to Defendants Hoult and Osterman. Thus, Plaintiff

has not alleged that Defendants Hoult and Osterman "either encouraged the specific incident[s] of

misconduct or in some other way directly participated in [them]." *Peatross*, 818 F.3d at 242

(quoting *Shehee*, 199 F.3d at 300).

Accordingly, for the foregoing reasons, Plaintiff's claims against Defendants Hoult and

Osterman will be dismissed for failure to state a claim upon which relief can be granted.

### b.    Defendant Ricklard

Plaintiff alleges that prior to leaving administrative segregation, he sent a kite to the D-

Block ARUS and begged not to be forced to go to general population. (Compl., ECF No. 1,

PageID.3.) Although Plaintiff does not mention Defendant Ricklard by name in the body of the

complaint, the Court presumes that Defendant Ricklard was the D-Block ARUS given that Plaintiff

has referred to Ricklard as an ARUS/Prison Counselor. (*Id.*, PageID.2.) In his kite, Plaintiff

expressed fear of being assaulted given the "bounty" placed on him by gangs. (*Id.*) In response,

Plaintiff was told that he either had to give information regarding top gang leaders or "go face the

consequences of being a snitch, whatever happens, happens!" (*Id.*) Subsequently, after Plaintiff

was moved to general population, he was assaulted by another inmate. (*Id.*) Although Plaintiff has by no means proven his claim, at this point in the litigation, the Court will not dismiss Plaintiff's Eighth Amendment failure to protect claim against Defendant Ricklard.

> ### 2.    Violations of MDOC Policy

Plaintiff also mentions that Defendants' actions violated MDOC policy. (Compl., ECF No. 1, PageID.3.)

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated the MDOC's policies fail to state a claim under § 1983.

Additionally, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that violated MDOC policy fails to raise a cognizable federal claim.

Accordingly, Plaintiff's § 1983 claims regarding alleged violations of MDOC policy will be dismissed for failure to state a claim.

## <u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants Osterman and Hoult will be

dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Ricklard: (1) Plaintiff's official capacity claims; and (2) any § 1983 claims regarding violations of MDOC policy. Plaintiff's personal capacity Eighth Amendment failure to protect claim against Defendant Ricklard remains in the case.

An order consistent with this opinion will be entered.


Dated:    December 2, 2025                              /s/ Ray Kent
                                                        Ray Kent
                                                        United States Magistrate Judge

14